55 CCPA
**Application of Charles J. KOESTER and Elias Snitzer.**

**Patent Appeal No. 7924.**

United States Court of Customs and Patent Appeals.

April 4, 1968.

tion, during which time he was not able to retain any food.

Morton Amster, New York City, J. Albert Hultquist, for appellants.

Joseph Schimmel, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH and ALMOND, Judges.

SMITH, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals,[1] affirming the examiner's rejection of all claims in appellants' application.[2]

Two issues are presented in this appeal: (1) whether appellants' claimed invention would have been obvious at the time it was made within the meaning of 35 U.S.C. § 103; and (2) whether the decision of the Board of Appeals included a new ground of rejection.

### The Invention

Appellants' claimed invention relates to an apparatus and method for directing a laser beam along a prescribed path. By way of background, appellants' brief explains that a laser essentially comprises a rod of a material, such as ruby, capable of emitting energy when stimulated by other energy. The rod has plane, parallel reflective surfaces at its opposite ends. The reflective end surfaces define a resonant cavity. When the rod is stimulated, by a flash tube for example, it emits a pulse of radiant energy from one end surface of the body in a direction perpendicular to that surface. The emitted pulse is typically of very brief duration, but highly intense. The light beam thus emitted is also substantially collimated, coherent and monochromatic. It was recognized in the art that the laser would find use in medical applications. In the subject application, a laser beam is shown in a photo-coagulation apparatus for correcting retinal detachments.

Appellants further explain that, in photo-coagulation of the human eye, it is not feasible to experiment with the laser beam itself to direct and focus it on the patient's retina. In the process of aiming the beam, the patient's vision could be seriously impaired because the laser beam is so intense. Moreover, it would be exceedingly difficult to aim the beam itself since the duration of the beam is often in the order of micro-seconds. This is an insufficient time period during which to aim it.

To overcome this problem, appellants disclose the use of a second light beam of lower intensity during the aiming and focusing steps. Applicants devised a technique whereby the low-intensity beam was made to follow the path subsequently taken by the laser beam. In such a case, the proper aiming of the low-intensity beam would assure that the laser beam would be properly directed when fired. Appellants admit that techniques were known for aiming and focusing a collimated light beam. However, in appellants' invention, the low-intensity beam is, in effect, caused to leave the same end of the laser from which the high-intensity beam is emitted, and along the same path taken by the laser beam. Thus, by varying the direction and focus of the low-intensity beam, the laser beam is aimed and focused in the same manner before the high-intensity beam is generated.

---

1. The board consisted of Messrs. McCann, Kreek and Keely, Examiners-in-Chief. Mr. Keely wrote the opinion of the board.

2. Serial No. 256,033, filed February 4, 1963 for "Method and Apparatus for Directing Output of Optical Masers." The application is denominated a "division" of appellants' copending application, Serial No. 108,020, filed May 5, 1961.

To so aim the device, appellants utilize the property that the laser beam is emitted in a direction perpendicular to the plane of an end face of the laser.

Appellants' invention may be better understood by reference to Figs. 2 and 3 which illustrate one embodiment of the invention.

Fig. 2

Fig. 3

The emitted laser beam follows a path perpendicular to the plane of end face 22.2 of laser 12. Before the laser is fired, lamp 46 is operated to direct a low-intensity aiming light beam along an aiming path through lens 47, aperture 44.1, lens 48, light polarizer 51 and dichroic mirror 40 toward end face 22.2. The low-intensity light beam is reflected from end face 22.2 and retraces its original aiming path when the light beam and the corresponding aiming path are perpendicular to the plane of face 22.2. If the aiming beam is not perpendicular to the end face, the reflected aiming beam will not retrace the original aiming path and the light point image when refocused on screen 44 will not strike aperture 44.1. In such a case, lens 48 and aperture 44.1 may be adjusted relative to laser end face 22.2 until the reflected light refocused by lens 48 is concentrated upon screen aperture 44.1. At this time, the collimated aiming light beam incident upon surface 22.2 must be perpendicular to the face 22.2. Since the laser beam subsequently emitted follows a laser beam path perpendicular to the end face, both the aiming and laser beams take the same path from end face 22.2.

The original and reflected light paths of the low-intensity aiming beam are the same for various angular positions of the dichroic mirror 40. Thus, although the position of mirror 40 is adjusted for focusing the low-intensity aiming (and also the high-intensity laser) beam on the patient's eye, the adjustment does not affect the path taken by light 50 in Fig. 2.

Fig. 3 depicts only the low-intensity aiming light reflected from end face 22.2. As mirror 40 is adjusted, part of the light beam, shown by arrows 52, can be properly aimed and focused on the patient's eye. During the focusing step, light striking the eye is reflected back along its original path, and through mirror 40 and polarizer 61 to an ophthalmoscope, the lens of which is shown at 56. The ophthalmologist can thus see the image of the light formed on the patient's retina as the position of mirror 40 is ad-

justed. Because the low-intensity aiming beam focused on the eye during the previous step was, in effect, emitted from end face 22.2 from a direction perpendicular thereto, the laser beam when emitted will follow the same path as that indicated by the arrows 50 and 52 in Fig. 3. The high-intensity beam is thus automatically aimed and focused properly to effect photo-coagulation without danger to the patient.

## The Claims

Claim 1 is representative of the apparatus claims. Claim 3 is representative of the method claims. They state:

1. Maser apparatus comprising optical maser means having a pair of plane, parallel, reflective opposite end surfaces, said optical maser means being actuable to emit a collimated beam of radiant energy from one of said surfaces in a single direction perpendicular to said one surface, and means mounted in said apparatus projecting light toward a selected one of either of said optical maser surfaces in a direction perpendicular to said selected surface so that part of said light is directed in said single direction, whereby said maser apparatus can be arranged for directing said part of said light along a selected path prior to actuation of said optical maser means and said optical maser means can thereafter be actuated to direct a collimated beam of radiant energy emitted from said optical maser means along said path.

3. A method for arranging an optical maser having a pair of plane, parallel, reflective opposite end surfaces, one of which is adapted to emit a collimated beam of radiant energy in a single direction perpendicular to said surface, so that energy output of the optical maser is directed along a predetermined path, said method comprising the steps of providing means for projecting a substantially collimated beam of light, projecting a beam of collimated light from said means toward one of said plane surfaces in a direc-

tion perpendicular thereto so that part of said light can be directed in said single direction, and arranging the optical maser and light projecting means so that said part of said perpendicularly directed light is directed along said predetermined path, thereby to arrange the optical maser for subsequently directing energy output of the optical maser along said path.

## The References

The references relied upon are:

Carl Zeiss Jena        346,708        July 15, 1960
   (Switzerland)
   (hereinafter
   "Swiss patent")

Electronics, "Light Amplifier Extends Spectrum", July 22, 1960, Vol. 33, page 43 (hereinafter Electronics article)

---

The Electronics article discloses an oversimplified version of the basic theory and the structural features of a laser, including reflective end surfaces from one of which a laser beam may be emitted. Although the article does not describe the emitting face as being in a plane perpendicular to the direction of the laser beam, applicants do not contend that they were the first to note this property of the laser. The article states that, according to its source, no work had as yet been done on focusing the laser output beam.

The Swiss patent is the most pertinent reference and discloses a method and apparatus for determining the alignment and orientation of the axis of a rod or shaft by projecting parallel light rays upon a mirror attached to a perpendicular end surface of the rod. The light rays are reflected from the mirror in the same direction as the axis of the rod whenever they are projected in a direction parallel to the axis of the rod.

The sole figure of the Swiss patent is reproduced here:

---

The optical equipment has a horizontal or test axis, shown in the drawing by the dotted line. Shaft 1 similarly has a longitudinal axis, shown in the drawing

as coincident with the axis of the optical apparatus. During *orientation* or direction testing of the respective axes, testing lamp 3 is operated and the angular deviation is measured.

### The Rejection

The examiner, in his final Letter, rejected claims 1–4 as being "unpatentable under Section 103 over Switzerland taken with Electronics." He elaborated, as follows:

> * * * The purpose of such an arrangement [in the Swiss patent] is to determine the alignment of the shaft axis with the axis of the telescope. As applicant has pointed out the energy emitted from an optical maser is [in] a direction perpendicular to the maser end surface. It is also well known that an object reflected straight back on itself will be at right angles to the face of the reflecting mirror. This is the basic principle of auto-reflection and is a method commonly used in aiming and aligning, as shown by Switzerland. The problem of aiming the output of an optical maser such as that disclosed by Electronics and that of alignment, as disclosed by Switzerland, are the same. The solution to that problem is therefore shown by Switzerland. It would be obvious that the output of the optical maser of Electronics may be directed by an apparatus and in the manner, such as that disclosed by Switzerland. The apparatus claim language beginning with "whereby" is not given any patentable weight. Such a recitation is a statement of a desired result rather than the apparatus intended to accomplish that result. The two steps recited in the method is the basic principle of auto-reflection noted above. In addition the method is clearly not limited to or peculiar to optical masers. [Brackets added.]

In his Answer on appeal, the examiner reiterated essentially the same position. He further urged that:

> Considering the prior art combination as properly analogous, a super-ficial examination of the Switzerland reference reveals that if shaft 1 were in fact a ruby rod, the invention being claimed herein would be disclosed in the reference. The applicants have not challenged the Examiner's contention that plane parallel end surfaces are conventional in optical masers.

The board affirmed, stating its "accord" with the position of the examiner. However, the board added:

> * * * it appears to us that these claims as broadly drawn are readable on the device of Electronics when taken into the open and one end of the ruby crystal thereof exposed to sunlight. Light from the sun reaches the earth in parallel rays and is therefore considered to be collimated.
>
> When the present claims are stripped of their non-significant statements of capabilities, functions and results * * * they recite only the laser of Electronics exposed to sunlight, or the manipulative steps of exposing said laser to sunlight. [Citations omitted.]

### Opinion

In view of our disposition of this appeal, it is not necessary to decide whether that portion of the board's opinion quoted above constitutes a "new ground of rejection," as appellants urge.

On the issue arising under 35 U.S.C. § 103, we agree with the position of the examiner as affirmed by the board. Appellants here first argue that, for the proper operation of the reference apparatus, which they term a "testing device," the impinging light beam must necessarily be at an angle with respect to the mirror on the end of the shaft when the shaft is not properly oriented. On the contrary, in appellants' claimed invention, the low-intensity beam must always be perpendicular to the end faces of the laser. They point out that the lamp 3 is only operated in the reference apparatus during orientation testing to measure the deviation of the shaft axis from the telescope axis. Thus, appellants conclude that, even if the laser, as taught by Electronics were substituted

for the shaft of the Swiss patent, the requirements of the claims would not be met.

The solicitor contends that the usefulness of the Swiss apparatus is to orient and align the axis of the rod along the telescope axis as shown in the drawing. The Swiss patent, in the solicitor's view, thus desires, achieves, and shows apparatus to provide a light beam perpendicular to the end face of the shaft. We view the solicitor's argument as stating that the teachings of the Swiss patent would continue to be equally applicable to a laser as it is analogous for purposes of the claimed invention to the shaft of the Swiss patent. At oral argument, the laser in the present context was considered by the solicitor to be a rod in the mechanical sense. The solicitor concludes that applying the teachings of the Swiss patent to an admittedly known laser would render the invention as claimed in the appealed claims obvious in the sense of 35 U.S.C. § 103. We agree that the claims, as presented, would have been obvious in view of this art within the statutory sense.

Appellants next urge that a "precondition" of the orientation test is that the projected beam follow the test axis toward the mirror on the shaft. They conclude that the Swiss apparatus is operative only if the projected beam always takes the same initial path, i. e., along the telescope axis. Thus, it is appellants' position that they, too, wish their projected beam to coincide with an apparatus axis, in their case, the laser axis, and so, they claim means and method for achieving this result, even though it is "presupposed" in the reference.

The solicitor responds that any criticism that appellants make of the Swiss apparatus in this regard also applies to appellants' apparatus since the projected light beam must be aligned along the desired axis in either apparatus. We agree with the solicitor that this may be accomplished in the Swiss apparatus by adjusting the light source relative to the reflective surface of the rod until the reflected light is concentrated upon the center of the scale plate 11. This, in our view, appears to be at least equivalent to the method of adjustment described by appellants in their application.

In any event, we think that insofar as appellants' argument is directed to a factual difference between the claimed invention and the prior art, it must be considered. However, viewing appellants' claimed invention as a whole, as we must, it seems to us that appellants' argument is not convincing on that issue.

Finally, appellants argue that the references fail to suggest that the end face of a laser rod may be used to enable precise aiming of the laser beam with the aiming of another, lower intensity light beam. In this respect, appellants submit that the internal silvered face of a silvered end of the laser rod was used in developing the laser beam whereas appellants' invention entails the use of the *external* face of the silvered end.

That argument seems to detract from whatever differences may exist between the laser and the shaft as mechanical elements of a disclosed combination. We think it sufficient to note that the Swiss patent suggests the use of an external reflecting face of any rod or shaft to indicate the direction of the axis thereof and to aim or align the axis in a desired direction.

We have thus considered appellants' arguments, but believe that the position taken by the examiner, and affirmed by the board, on the issue of obviousness was basically sound.

Therefore, we affirm the decision of the board.

Affirmed.